In the Matter of the Estate of PAULINE KIMBLE, Deceased.

Surrogate's Court, Erie County, June 7, 1935.

*Maynard C. Schaus*, for Walden M. Ward and another, executors.

*Fred W. Plato*, for Ernest F. Kruse, executor.

*Saperston, McNaughtan & Saperston* [*Howard T. Saperston* of counsel], for Elizabeth Holmes and others, residuary legatees.

*Walden M. Ward, Lee B. Ward* and *Ernest F. Kruse*, executors, in person.

*Elizabeth Holmes, William Hathaway* and *Clyde Hathaway*, residuary legatees, in person.

HART, S.   This proceeding, involving some unique and startling questions concerning equitable and legal rights, compels some expression in the form of opinion or memorandum supplemental to the ordinary practice of decision and decree, as provided by section 71 of the Surrogate's Court Act.

The testatrix, Pauline Kimble, died July 2, 1934.   At the time of her death she was an incompetent and her properties were under control of a committee, duly appointed by the County Court.   The will nominated three executors, two of whom petitioned for probate. The third executor named was inaccessible; touring Europe with an invalid son, business cares laid aside, no particular destination after landing at Bremen, with only a forwarding address, the knowledge of which address appears to have been confined to the wife remaining at home.   The attorney for the two resident executors made frequent inquiry at the office and home of the absentee, unable to obtain a specific address, notified the wife and office associate of the purpose of his inquiry, filed a petition for probate but failed to issue citation to the absent executor, learning that he was expected to remain in Europe for at least six months.

A decree of probate was entered July 19, 1934, which provided for the appointment of the three executors named in the will. Letters testamentary were issued to the two resident executors, who carried on with the administration of the estate, which involved the marshaling of assets and transfer of funds from the committee to the executors, the employment of expert accountants and the general administrative work in consultation with counsel, executors and the residuary legatees.   After further inquiry as to the whereabouts of the absent executor, with no definite information as to his contemplated return, the executors, upon petition, procured the issuance of a supplemental citation, addressed to the absentee executor, for the purpose of regularity, and served same by publication and mailing, pursuant to order, and on the return date, November 26, 1934, procured a supplemental decree awarding letters testamentary to the said Ernest F. Kruse, and providing for the service of said decree on said Kruse by mailing a copy thereof to Ernest F. Kruse, 54 Maple avenue, Hamburg, N. Y., his home address, and further ratifying and confirming the decree heretofore granted; that before the fifteen days elapsed, under which the said Kruse might qualify, after the entry of said decree, the absentee

executor returned to his home, duly qualified, and letters testamentary were issued to him December 21, 1934.

In the meantime the administration of the estate had been carried on, both State and Federal tax reports prepared, securities sold in co-operation with the residuary legatees, specific legatees informed of progress made, agreements made with the residuary legatees as to compensation of counsel preparatory to distribution of the estate and discharge of executors at the earliest possible date in compliance with the statute. The absentee executor, Mr. Kruse, has been a practicing lawyer for more than fifty years. He drew the will in which he was named as executor. At the time of the death of the testatrix he was on the ocean, and, as nearly as can be ascertained, his wife was the only person acquainted with his address; knowledge of the death of the testatrix did not reach him until the latter part of July or early August. No communication was received by the executors as to the wishes or intention of Mr. Kruse, his mind very properly being devoted to his disabled son, as testified to by him. The absent executor, Kruse, returned to Buffalo November thirteenth; he made no contact with the executors or their attorney until a week later; he then appeared, took his oath of office and qualified as executor. The estate being of substantial type, in liquid form, only awaiting the seven months' period of accounting and distribution, the specific legatees co-operating with the residuary legatees in whom the ultimate ownership exists, anxious for avoidance of interference, made an offer to Mr. Kruse of full commissions if he would renounce his appointment. While this practice has not had judicial approval (*Oakeshott* v. *Smith*, 104 App. Div. 384), a percentage division of a large portion of the estate had been agreed upon before Mr. Kruse's return; the residuary legatees undoubtedly had the right to contribute their own money and make their own arrangements outside of the jurisdiction of the court. While awaiting distribution of the estate, Mr. Kruse, as the supplemental executor, engaged his office associate as counsel, and the seemingly unnecessary activities begin, he demanding joint control of the bank accounts, copies of all papers, and a request for counsel fee for himself and his attorney. The estate of Pauline Kimble up to this time had been a matter of routine and required no observation or study in common with others of the peaceful type where legal services, conferences, compromise of claims, adjustments of taxes are had without requiring judicial intervention.

The present application for legal services of Mr. Kruse and his attorney are the sole questions submitted to me; his commissions have been stipulated, which will exceed $3,000, of which he has already received $2,000; the estate, which exceeded $190,000 in

value, permits the award of full commissions to three executors. The activities of the returning executor and his counsel have failed to disclose the slightest inaccuracy pertaining to the accounts of the committee or the acting executors, with the exception of the omission of a county clerk's certificate as applied to a waiver acknowledged before a notary public with seal. The tardy executor and his counsel have undoubtedly done considerable work, neither of whom seem able to differentiate or distinguish between executorial or legal service. The investigation, inquiry and study, as sworn to by the claimants, failed in every particular in benefiting the estate in any regard whatever. The alleged services may have been rendered, but the service appears to have been futile and unnecessary, performed voluntarily with the main object in view of burdening the estate with additional expense.

It is the primary duty of an executor to qualify, and ample provision is made under section 157 of the Surrogate's Court Act to compel speedy action. Possible courtesy to a brother attorney accounts for the lack of invoking the power granted, as may be inferred from the continuing inquiries and correspondence made by the attorney for the acting executors. Little reciprocity was shown after the delinquent executor received his appointment for the consideration exhibited during his absence from the country. The record shows no necessity for the appointment of the third executor two months before the statutory time permitted for discharge, with the work practically completed. No effort was made to apportion the commissions commensurate to the services respectively performed, despite the recalcitrant attitude assumed by the claimant. Sufficient compensation has been agreed upon, stipulated and paid, and I can find no rule of law or reason justifying the grant of additional counsel fees to the executor, a practitioner of law for fifty years, or his counsel, for services of no substantial importance or benefit to the estate. I have no criticism of Mr. Plato's acting as the attorney for his office associate of many years, but with whom he seemed to have no correspondence or information concerning his whereabouts during the search for the absent executor. I have no doubt that he rendered some service for his client; the commissions in excess of $3,000 for each executor, especially for Mr. Kruse, seem adequate for him and his counsel, and I refuse to grant additional amounts. I find in the record, however, an offer of the attorney for the residuary legatees of $500 additional to Mr. Plato " providing no appeal is taken." With this magnanimous offer on the part of the generous residuaries, contributing their own moneys in the nature of a peace pact, I have no concern.

Application for counsel fees is denied.